UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LORRIN WHISNANT,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C03-5121

ORDER GRANTING MOTION TO EXCLUDE THE TESTIMONY OF DR. GORDON BAKER

    This matter comes before the Court on Defendant's motion to exclude the testimony of Plaintiff's expert Dr. Gordon Baker. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion for the reasons stated below.

**INTRODUCTION AND BACKGROUND**

    This is a toxic tort case brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. Plaintiff, Lorrin Whisnant alleges that he sustained personal injuries caused by mold exposure at the Naval Base Kitsap in Silverdale, Washington (formerly known as the Bangor Submarine Base). Plaintiff has retained Dr. Gordon Baker, an allergist and immunologist, as a medical expert. In his report, Dr. Baker opines that Mr. Whisnant experienced cough, headaches,

ORDER - 1

and fatigue as a result of mold exposure in the commissary meat department.

Defendant moves to have the testimony of Dr Baker excluded from evidence on the basis that his opinions and methodologies are scientifically unreliable. Defendant contends that (1) Dr Baker improperly performed an intracutaneous skin test and then improperly interpreted the results as indicating an allergic or immune response to mold, (2) Dr. Baker relied on antibody serum testing methods performed by Immunosciences Lab, Inc., that have been rejected as invalid, and (3) Dr. Baker failed to perform a proper differential diagnosis to establish that mold exposure at the commissary was the cause of Mr. Whisnant's symptoms.

In response, Plaintiff does not refute or confront the Defendant's evidence, but merely asserts that the Defendant's arguments are substantive challenges to Dr. Baker's opinions that go to the weight and persuasiveness of his testimony and are not a basis for determining admissibility. Plaintiff is incorrect.

**STANDARDS GOVERNING ADMISSION OF EXPERT TESTIMONY**

Scientific evidence is admitted pursuant to Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 requires the trial court to make several preliminary determinations before admitting expert testimony. The Ninth Circuit has, summarized these determinations to include: whether the opinion is based on scientific, technical, or other specialized knowledge; whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter; whether the testimony is relevant and reliable; and whether the methodology or technique the expert uses fits the conclusions. United States v. Hankey, 203 F.3d

ORDER - 2

1160, 1168 (9th Cir. 2000).

In two now well-known cases, the Supreme Court has articulated the trial court's gate-keeping function under Rule 702.  See, <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993); <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999).  As a preliminary matter, the trial court is required to determine whether a proposed expert is qualified to give expert testimony. <u>Kumho</u>, at 156.   If the trial court determines that the expert is qualified in the relevant field, then the court must exercise its gate-keeper function as provided in <u>Daubert</u> and <u>Kumho</u>.  In <u>Daubert</u>, the Court held that Rule 702 imposes a special obligation upon the trial judge to "ensure that any and all scientific testimony ... is not only relevant but reliable." <u>Daubert,</u> at 589-90.

Thus, Rule 702  imposes a "gate-keeping" duty on district courts to ensure that testimony based on scientific, technical, or other specialized knowledge rests on a reliable foundation. <u>Daubert,</u> at 597; <u>Kumho</u>, at 141-42. "[T]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." Fed. R. Evid. 702 Advisory Committee's Notes. "The trial court's gate-keeping function requires more than simply taking the expert's word for it."   <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1319 (9th Cir.1995) (" <u>Daubert II</u> ").  In addition, "any step that renders [the expert's] analysis unreliable ... renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."  <u>In re Silicone Gel Breast Implants Products Liability Litigation</u>, 318 F. Supp.2d 879, 890 (DC Cal. 2004).

<u>Daubert</u> sets forth a non-exclusive list of factors that the trial court should ordinarily apply when considering the reliability of scientific evidence: (1) whether the technique can or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique.  <u>Daubert</u>, at 592-93; <u>Domingo ex rel. Domingo v. T.K.</u>, 289 F.3d 600, 605 (9th Cir. 2002).  The <u>Kumho</u> Court concluded that a trial court may consider one or more of the specific

ORDER - 3

Daubert factors when doing so will help determine that testimony's reliability. Kumho, at 151. The test of reliability is 'flexible,' and the Daubert factors neither necessarily nor exclusively apply to all experts or in every case. Id.

In addition to the Daubert criteria, courts have also found the following factors relevant in assessing the reliability of expert testimony: (1) whether the expert is proposing to testify about matters growing directly out of independent research he or she has conducted or whether the opinion was developed expressly for purposes of testifying; (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the expert has adequately accounted for obvious alternative explanations; (4) whether the expert is being as careful as he would be in his regular professional work; and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered. Fed. R. Evid. 702 Advisory Committee's Notes; In re Silicone, at 890.

The burden of proof on a Daubert issue rests on the proponent of the testimony. "The proponent need not prove that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." Moore v. Ashland Chem., Inc., 151 F.3d 269, 276 (5th Cir. 1998). Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive. Daubert II, at 1315-16. "[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Id., at 1316.

In determining whether a proffer of scientific evidence is sufficiently reliable, the Ninth Circuit has held that one very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying. If the

ORDER - 4

testimony is not based on independent research then what is required is proof that the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication.  Daubert II, at 1317-18;  Clausen v. M/V New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003); Metabolife Intern., Inc. v. Wornick,  264 F.3d 832, 841 (9th Cir. 2001).

## DR BAKER'S TESTIMONY AND THE ISSUE OF RELIABILITY

Dr. Baker used three methods to ascertain whether Mr. Whisnant had an allergic/immune response to molds: the skin prick test[1] and the intracutaneous skin test to establish allergic response and the Immunosciences Lab antibody blood test, which purports to show immune response.  The Defendant seeks exclusion of the results of the intracutaneous skin test, the antibody blood test results and Dr. Baker's opinions based on these tests for lack of reliability.

Dr. Baker belongs to the American Academy of Allergy, Asthma, and Immunology.  The Academy publishes the Practice Parameters for Allergy Diagnostic Testing (Practice Parameters) within the field.  The Practice Parameters require the use of a negative control when conducting intracutaneous skin tests.  Failure to use a negative control makes the test unreliable.  Dr Baker also used a non-standard ruler to measure reactions to mold antigens.  This practice is contrary to the Practice Parameters and leads to biased and unreliable test results.  Finally, Dr. Baker interpreted the test results in a manner inconsistent with the Practice parameters of the field of practice.  The intracutaneous skin test methods employed by Dr. Baker do not meet the Practice Parameters. Plaintiff has provided no objective, independent validation of the expert's methodology and as such the test results and opinions derived therefrom are not based on sound science. The intracutaneous skin tests results and the opinions of Dr. Baker derived therefrom are inadmissable pursuant to Fed. R. Evid. 702.

---

[1] The skin prick test performed by Dr. Baker showed no allergy to molds by Mr. Whisnant.

ORDER - 5

The methodologies and test results of the antibody blood tests conducted by Immunosciences Labs, Inc. have been determined to be unreliable by the U.S. Department of Health and Human Services and as number of courts, including the Ninth Circuit.  See, <u>Cabrera v. Cordis,</u> 134 F.3d 1418, 1422 (9th Cir. 1998).  In <u>Geffcken v. D'Andrea</u>,137 Cal. App.4th 1298, 1309-10(2006) the court held the Immunosciences' antibody blood test had not gained general acceptance in relevant scientific community and thus test results were not admissible in plaintiffs' action for damages allegedly caused by exposure to toxic mold.  The test was considered by other experts as unreliable and not generally accepted as valid technique to determine human exposure to mycotoxins.  As a matter of law, plaintiffs failed to show that the test has gained general acceptance in the relevant scientific community as a valid diagnostic technique for assessing human exposure to toxigenic mold.

In opposition to this argument, Plaintiff Whisnant simply contends that the Immunosciences tests do not form the foundation for Dr. Baker's opinions, but instead confirm the medical conclusions already reached.  The Plaintiff has failed to meet the burden of proof that the Immunosciences antibody blood tests are reliable.

The Court finds the Immunosciences antibody blood tests unreliable and thus inadmissable under  Fed. R. Evid. 702.

The Defendant also contests the methodology of Dr. Baker for failure to perform a proper differential diagnostic analysis.  Differential diagnosis, the process of elimination that physicians routinely use to identify the most likely cause of a particular individual's illness, is an acceptable source of data on specific causation.  <u>In re Silicone</u>, at 892; <u>Hall v. Baxter Healthcare Corp</u>., 947 F.Supp. 1387, 1413 (D. Or. 1996).  By examining the patient's symptoms, medical history, diagnostic test results, etc., a doctor can eliminate alternative causes and reach a conclusion about the most likely cause of a particular patient's condition. "[T]o the extent that a doctor utilizes standard diagnostic techniques in gathering this information, the more likely [it is that a court will] find that the doctor's methodology is reliable." <u>In re Silicone</u>, at 892; <u>In re Paoli R.R. Yard PCB Litig</u>., 35 F.3d

ORDER - 6

717, 759 (3rd Cir. 1994). The Defendant points out that Dr. Baker failed to consider air sampling data showing that none of the eight molds and one mycotoxin identified by in Dr Baker's reports was ever detected in the commissary meat department. Additionally, Dr. Baker failed to rule out other potential causes of Mr. Whisnant's symptoms, several of which were previously diagnosed by his treating physicians. For these additional reasons, Dr. Baker's methodology lacks reliability.

## CONCLUSION

For the reasons set forth above, the Court will exclude the testimony of Plaintiff's expert witness, Dr. Gordon Baker, the results of the intracutaneous skin test, and the results of the Immunosciences Lab mold antibody serum tests.

ACCORDINGLY,

IT IS ORDERED:

Defendant's Motion to Exclude the Testimony of Dr. Gordon Baker, the Intracutaneous Skin Test Results, and the Immunosciences Lab, Inc. Blood Test Results [Dkt #69] is **GRANTED**.

DATED this 5th day of October, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 7