UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LORRIN WHISNANT,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. C03-5121 FDB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT STANLEY FREEMAN |

    This matter comes before the Court on Defendant's motion to exclude the testimony of Plaintiff's expert Mr. Stanley Freeman. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion for the reasons stated below.

### INTRODUCTION AND BACKGROUND

    This is a toxic tort case brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. Plaintiff, Lorrin Whisnant alleges that he sustained personal injuries caused by mold exposure at the commissary meat department of the Naval Base Kitsap in Silverdale, Washington (formerly known as the Bangor Submarine Base). Plaintiff has retained as an expert in

ORDER - 1

the area of safety and health management and industrial health and safety.  Mr. Stanley's testimony proposes to opine that the Defendant did not meet the standard of care because it did not consult an expert regarding air quality prior to the time mold was discovered on its premises.  It is his opinion that safety personnel of the commissary should have acted more promptly, diligently and/or reasonably in response to clear indications that something was causing adverse reactions in employees and customers of the commissary.  The primary basis of Mr. Freeman's opinions are his belief that as early as1999, safety reports at the commissary provided indications that employees were falling ill as a result of some form of airborne irritant and it was not reasonable for safety personnel not to attempt to determine if the cause was a hidden contaminant.  In essence, Mr. Freeman proposes to opine that the detection and abatement procedures that ultimately took place in 2000 should have occurred earlier.  Defendant objects to Mr. Freeman's testimony on the basis that (1) he is unqualified to testify to the issue proffered and (2) his opinion is unreliable.

Mr. Freeman obtained a Master of Arts Degree in 1959 from New York University in Organizational and Direction of Safety Education and Industrial Safety.  He has been employed as a consultant for various corporations and the City of Seattle and taught classes at the University of Washington until his retirement in 1999.  Prior to retirement, Mr. Freeman had been certified as a safety engineer and was a member of the American Society of Safety Engineers (ASSE) in the Construction Specialty Program.  He has not been re-certified as a safety professional since 1998, and his professional certification has lapsed.  Mr. Freeman acknowledges that while a practicing safety engineer, the area of evaluating safety matters for air borne contaminants was outside his area of practice.

The ASSE divides its membership into 13 practice specialities.  Mr. Freeman was a member of the Construction Specialty Program.  He was not a member of the Industrial Hygiene Specialty Program which concerns of contaminants, toxic materials and airborne contaminants.  The preventative measures endorsed by the ASSE for excessive airborne mold are "visual inspections for

ORDER - 2

mold growth and proper building design.  Key indicators that mold levels may be a problem are factors such as excess moisture and complaints of musty odors or visual signs of mold growth.

Mr. Freeman has served exclusively as a consultant/expert for attorneys since his retirement and has testified in eighty cases.  Of these eighty cases, none have involved safety issues related to airborne contaminants.  Mr. Freeman acknowledges that he is not an expert in airborne contamination prevention.

The safety reports which form the foundation of Mr. Freeman opinion do not indicate whether any of the six reported instances of injury or illness are associated with mold.  Nor has Mr. Freeman demonstrated whether these incidents are statistically significant in relation to safety measures regarding airborne contaminants.

**STANDARDS GOVERNING ADMISSION OF EXPERT TESTIMONY**

Scientific evidence is admitted pursuant to Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In determining whether to admit an expert's testimony, a district court must ensure that the testimony is reliable (based on scientific, technical or other specialized knowledge) and relevant (will assist the trier of fact).  <u>Daubert v. Merrell Dow Pharms, Inc</u>, 509 U.S. 579, 589-91 (1993).  To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that his opinion is adequately supported.  <u>Daubert</u>, at 589-90.  Expert testimony is not admissible if it is speculative, unsupported by sufficient facts or contrary to the facts of the case.  See, <u>General Electric v. Joiner</u>, 522 U.S. 136, 146 (1997) (holding that courts should not admit expert testimony that "is connected to existing data only by the ipse dixit of the expert").

ORDER - 3

1    Rule 702 requires the trial court to make several preliminary determinations before admitting
2 expert testimony. The Ninth Circuit has, summarized these determinations to include: whether the
3 opinion is based on scientific, technical, or other specialized knowledge; whether the expert's opinion
4 would assist the trier of fact in understanding the evidence or determining a fact in issue; whether the
5 expert has appropriate qualifications, i.e., some special knowledge, skill, experience, training or
6 education on that subject matter; whether the testimony is relevant and reliable; and whether the
7 methodology or technique the expert uses fits the conclusions. United States v. Hankey, 203 F.3d
8 1160, 1168 (9th Cir. 2000).

9    In two now well-known cases, the Supreme Court has articulated the trial court's
10 gate-keeping function under Rule 702. See, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579
11 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). As a preliminary matter, the trial court
12 is required to determine whether a proposed expert is qualified to give expert testimony. Kumho, at
13 156. If the trial court determines that the expert is qualified in the relevant field, then the court must
14 exercise its gate-keeper function as provided in Daubert and Kumho. In Daubert, the Court held that
15 Rule 702 imposes a special obligation upon the trial judge to "ensure that any and all scientific
16 testimony ... is not only relevant but reliable." Daubert, at 589-90. "The trial court's gate-keeping
17 function requires more than simply taking the expert's word for it." Daubert v. Merrell Dow
18 Pharms., Inc., 43 F.3d 1311, 1319 (9th Cir.1995) (" Daubert II "). In addition, "any step that renders
19 [the expert's] analysis unreliable ... renders the expert's testimony inadmissible. This is true whether
20 the step completely changes a reliable methodology or merely misapplies that methodology." In re
21 Silicone Gel Breast Implants Products Liability Litigation, 318 F. Supp.2d 879, 890 (DC Cal. 2004).

**MR. FREEMAN LACKS QUALIFICATIONS AS AN EXPERT
AND HIS TESTIMONY IS NOT RELIABLE**

   Mr. Freeman lacks the experience, educational stature, and credentials to be authoritative in his proffered testimony. Mr. Freeman's education and certification is in construction safety. He has

ORDER - 4

never been certified in industrial hygiene and has never been qualified as an expert in air contamination. He has no experience with standards governing preventative measures in air contamination. Mr. Freeman simply lacks the expertise to render an opinion on appropriate testing protocols for airborne contaminants.

Plaintiff fails to show that the proposed testimony satisfied the reliability prong of Rule 702, which requires that "the testimony is the product of reliable principles and methods." The court need not admit an expert opinion that is connected to the underlying data "only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). It may exclude such testimony if it determines "that there is simply too great an analytical gap between the data and the opinion proffered." Id. "The trial court's gate-keeping function requires more than simply taking the expert's word for it." Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) (" Daubert II "). In addition, "any step that renders [the expert's] analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." In re Silicone Gel Breast Implants Products Liability Litigation, 318 F. Supp.2d 879, 890 (DC Cal. 2004). Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive. Daubert II , at 1315-16. "[T]he expert's bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Id., at 1316.

It appears that the sole methodology employed by Mr. Freeman was to examine the six incident reports and conclude that the Defendant should have conducted testing for airborne contaminants at an earlier date than the performed remediation. Plaintiff does not support this methodology with any published or recognized industry standard. It is simply ipse dixit and will not be recognized by the Court as satisfying this Court's gate-keeping responsibility to assure that expert

ORDER - 5

testimony is reliable.  Mr. Freeman's testimony does not met the requirements of admissibility pursuant to Rule 702.

## CONCLUSION

For the reasons set forth above, the Court will exclude the testimony of Plaintiff's expert witness, Mr. Stanley Freeman

ACCORDINGLY,

IT IS ORDERED:

Defendant's Motion In Limine to Exclude the Testimony of Mr. Stanley Freeman [Dkt #74] is **GRANTED**.

DATED this 10th day of October, 2006.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 6